# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7967 | **DATE** | 12/20/2004 |
| **CASE TITLE** | Sheila Talton vs. Unisource Network Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER denying certain defendants' motion for leave to amend answer to add new affirmative defenses [126-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 21 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 158 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHEILA TALTON, on behalf of herself and )
derivatively on behalf of Unisource Network )
Services, Inc., )
)
          Plaintiff, )   Case No. 00 C 7967
)
v. )   Judge Mark Filip
)
UNISOURCE NETWORK SERVICES, INC., )
an Illinois corporation, et al., )
)
          Defendants. )

DOCKETED
DEC 2 1 2004

## MEMORANDUM OPINION AND ORDER DENYING CERTAIN DEFENDANTS' MOTION FOR LEAVE TO AMEND ANSWER TO ADD NEW AFFIRMATIVE DEFENSES

Plaintiff brought this suit in December 2000 against defendant Unisource Network Services, Inc. ("Unisource"); defendants Michael Fields, Jerry Edgerton, Derrick Collins, John Doerer, Walter Threadgill, Woody Chamberlain, and Thurman Jordan (collectively "Individual Defendants," and together, with Unisource, collectively "Movants"); and defendants Polestar Capital, Inc., Polestar Capital Fund II, L.P., Polestar Capital Fund III, L.P., and Atlantic Coastal Investors, L.P. (collectively "Venture Capitalists"), for alleged securities fraud violations and other claims. In April 2004, after more than three years of this litigation, Unisource and the Individual Defendants moved to amend their Answer to the First Amended Complaint ("Motion") to plead the affirmative defenses of "collateral estoppel and *res judicata*" based on a 2001 arbitration that took place in Chicago. (D.E. 126.) Movants earlier answered Plaintiff's First Amended Complaint in October 2002 (D.E. 70), following the filing of two motions to dismiss (D.E. 15 & 44), and they also filed a summary judgment motion in June 2003 (D.E. 84). Movants do not contend that they ever raised the subject of collateral estoppel or *res judicata* in



any of their pleadings or motions prior to April 2004, including in their October 2002 Answer to the First Amended Complaint, which was filed some seventeen months after the conclusion of the 2001 arbitration.

## LEGAL ANALYSIS

Although leave to amend shall be freely given when justice so requires, "leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance to the amendment, or futility of the amendment." *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (citing *Foman v. Davis*, 371 U.S. 178, 183 (1962)). Such a decision is committed to the discretion of the trial court. *See Campania Mgmt., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848 (7th Cir. 2002) (quoting *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992)). Here, amendment of Movants' answer would be unwarranted on multiple independent bases because, in the Court's view: there has been undue delay; Plaintiff would thereby be subjected to undue prejudice; the timing of the proposed amendment appears to reflect dilatory motive and aspects of unfair strategic manipulation by Movants; and the proposed amendment is likely futile because Movants have almost surely waived and/or forfeited any arbitration rights, as explained further below.

A. Undue Delay

Unisource and the Individual Defendants filed the Motion more than a year and a half after filing their Answer to the First Amended Complaint (D.E. 70) and over a year after the close of discovery. The arbitration proffered as the basis for the supposed *res judicata* and collateral estoppel defenses concluded approximately seventeen months before Movants' Answer was filed that omitted to include any such defenses.

Mere delay, standing alone, normally does not justify denying leave to amend a pleading. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). Nonetheless, precedent teaches that overly excessive delay can, itself, be prejudicial, *see King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994), and, in any event, "the longer the delay, the greater the presumption against granting leave to amend." *Id.* (collecting cases).

In this case, Movants offer no meaningful or compelling reason for delaying until so late in the proceeding to raise the supposed applicability of the defenses. The single supposed basis for excusing the delay—that Ms. Talton's entire fraud case is supposedly based on a single statement referenced in her deposition (see D.E. 126 at 4-5), is unconvincing—both because that deposition took place during the discovery period that concluded long before this Motion, and also because Ms. Talton's fraud claims are premised on alleged misstatements and omissions beyond the single statement Movants identify. *See, e.g., Talton v. Unisource, et al.*, No. 00 C 7967, 2004 WL 2191605, at *6-7 (N.D. Ill. Sept. 27, 2004) (discussing material omissions allegations related to Talton's theories). And, in any event, all of the alleged misstatements and omissions offered by Talton were included, at least generally, in Talton's sweeping complaints that were filed long before the instant Motion was filed. Simply put, Movants offer no good basis for waiting until the eleventh hour in this protracted proceeding to raise a *res judicata* defense, for example, that effectively contends that Plaintiff should have resolved this entire suit in a previously concluded arbitration.[1] *See Bethany Pharm. Co., Inc. v. QVC, Inc.*, 241 F.3d 854,

---

[1] That is particularly true, incidentally, because Movants never contended anywhere—*i.e.*, in the arbitration or here—that any of the claims in this lawsuit, which had already been filed, should have been resolved or addressed in the arbitral trial. Instead, Movants actively litigated in both fora.

861-62 (7th Cir. 2001) (upholding denial of leave to amend based, in part, on the fact that party seeking amendment offered no good explanation for delay and could have brought claim at any time earlier in litigation); *see also Venters v. City of Delphi*, 123 F.3d 956, 969 (7th Cir. 1997) (stating, in discussing waiver of a conceivably meritorious statute of limitations defense, that "if Rule 8(c) is not to become a nullity, we must not countenance attempts to invoke such defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff") (collecting cases); *Castro v. Chicago Housing Auth.*, 360 F.3d 721, 735 (7th Cir. 2004) ("We have stated numerous times that if a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived.") (collecting cases and finding that defenses were waived that were based on readily-available information).

Here, the Movants must have known about the arbitration at the time they filed their answer, as Unisource was a party to the Agreement that led to the arbitration and both Unisource and its officers and directors were named parties in the arbitration. (D.E 126, Ex. A, B.) Further delays without good reason need not be tolerated by the Court at this late juncture in the case. *See Bethany Pharm.*, 241 F.3d at 862 (collecting cases); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (affirming the district court's denial of an amendment to a counterclaim where, among other things, the facts underlying the proposed amendment "must have been known to defendants").

B. Undue Prejudice

Second, and relatedly, allowing Movants' proposed amendment would subject Plaintiff to undue prejudice. In this regard, precedent teaches that "a party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party." *King*, 26 F.3d

4

at 724 (citation omitted). With respect to prejudice, Plaintiff correctly points out that during the discovery process she reasonably did not address issues that would be relevant to deciding whether the 2001 arbitration—which had concluded some seventeen months before discovery began (D.E. 67)—would potentially be applicable to bar some or all of Plaintiff's claims. For example, Movants suggest that collateral estoppel could apply based on issues resolved in the 2001 arbitration. This contention appears to be substantively meritless because the arbitration seems to have addressed distinct issues, as discussed further below; however, even if collateral estoppel were otherwise potentially applicable, precedent teaches that the issue of whether to give collateral estoppel effect to findings from an arbitration is a fact-sensitive question, committed to the discretion of the trial court, and is an issue that must be considered with informed care. *See BEM I, LLC v. Anthropologie, Inc.*, No. 98 C 358, 2000 WL 1849574, at *11 (N.D. Ill. 2000) (trial court exercises discretion in determining the preclusive effect of arbitral awards), *aff'd* 301 F.3d 548 (7th Cir. 2002); *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1992) (stating that "[t]he application of collateral estoppel from arbitral findings is a matter within the broad discretion of the district court"). In considering whether to give preclusive effect to an arbitral finding, caselaw suggests that a trial court must consider factors such as the procedural adequacy of the particular arbitration proceeding and other factors that bear on the reliability of its results. *See, e.g., Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir. 1985) (applying a "case-by-case approach to determining the collateral estoppel effects of arbitration on [non-arbitrable] federal claims," and analyzing, *inter alia*, "the expertise of the arbitrator and his scope of authority under the arbitration agreement, and the procedural adequacy of the arbitration proceeding"); *see also Universal Am. Barge*, 946

F.2d at 1137 (noting, *inter alia*, "that arbitral findings typically lack the supervisory scrutiny of authoritative review, giving rise to the argument that arbitration risks determinations based on irrelevant or hearsay evidence, or the personal whims of arbitral panel members.").

In this regard, Plaintiff contends that collateral estoppel is not in play, because the arbitration was focused on and resolved only issues related to Ms. Talton's breach of contract/employee severance benefits claims. Although a review of the two-page arbitral opinion of May 2001 suggests that Ms. Talton is correct (D.E. 126, Ex. B), to fully analyze even just that collateral estoppel issue would, as Plaintiff reasonably contends, require additional discovery and factual presentations to establish what issues were necessarily resolved by the arbitrator. One would also need to explore the aforementioned procedural issues that bear on whether an arbitral result should be given preclusive effect in a judicial proceeding. Movants suggest that all of this might require another round of summary judgment motion practice (D.E. 126 at 6), notwithstanding that they already filed one such motion and two motions to dismiss. Under such circumstances—*i.e.*, where amendment of an answer would prompt the plaintiff to reasonably undergo additional discovery and, at least according to Movant's suggestion, would expose plaintiff to yet *another* round of pretrial dispositive motion practice—precedent instructs that a district court may fairly conclude that the prejudice is undue. *See, e.g., Cont'l Bank,*, 10 F.3d at 1298 (holding that an amendment was properly denied where facts underlying the amendment were known for two years prior to the amendment and the amendment would result in additional discovery); *Sterling v. Riddle*, No. 99 C 2678, 2000 WL 198440, at *4-5 (N.D. Ill. Feb. 11, 2000) (Conlon, J.) (finding *res judicata* defense waived where it was not mentioned in answer, defendant did not raise it until after close of discovery, and the availability of the defense was

long apparent); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt, Inc.*, No. 89 C 7021, 1993 WL 313049 (N.D. Ill. Aug. 13, 1993) (Zagel, J.) (denying motion to amend answer to include *res judicata* defense on eve of summary judgment, with motion offered almost two years after filing of initial answer, where defendant knew or should have known of basis for alleged *res judicata* defense earlier).[2]

C. Dilatory Motive

Third, the proposed amendment appears to reflect a dilatory motive.[3] The arbitration trial that supposedly should have been the *situs* for all of the disputes at issue in this case was not even commenced until after this lawsuit had been filed. Movants never moved to compel

---

[2] Movants suggest that Plaintiff will not be additionally and unduly burdened by adding their arbitration-based defenses because the so-called Venture Capitalist defendants (who are distinct from the Movant/defendants) included a similar defense in their answer and briefed that defense in their June 2003 summary judgment motion. This argument is unavailing. First, it is unclear whether the Venture Capitalists even pleaded collateral estoppel in their answer, as opposed to equitable estoppel. *See Talton v. Unisource, et al.*, No. 00 C 7967, 2004 WL 2191605, at *17 & n.19 (N.D. Ill. Sept. 27, 2004). The two defenses are different ones under Illinois law. *See id.* In addition, the Venture Capitalists clearly did not plead *res judicata*, which the Movants would seek to couple with a (waived) arbitration argument that would end Talton's entire case. Third, to the extent the Venture Capitalists raised collateral estoppel at all, it was argued as a minor issue, because the Venture Captalists appeared to share Talton's view that the arbitration addressed issues related to severance benefits that are largely unrelated to the fraud issues presented in this case. (*See* D.E. 86 (Venture Capitalists making estoppel argument concerning two paragraphs of Talton's 107-paragraph complaint, in an argument that comprised two-thirds of one page of otherwise voluminous summary judgment briefing); *see also Talton*, 2004 WL 2191605, at *17 & n.19 (discussing estoppel argument as presented by Venture Capitalist defendants).

[3] The caselaw sometimes loosely throws around the label "bad faith" when discussing denials of proposed amendments. The Court does not speak in such terms, as that phrase potentially implies a certain almost unethical culpability or wilfulness that would be entirely inappropriate in this case. The Court does not find or imply that Movants or their counsel have acted in an unethical or wilful way in any sense. However, as explained, the proposed amendment smacks of dilatory motive, which reinforces the undue prejudice and undue delay concerns that independently would warrant rejection of the Motion.

arbitration of the instant disputes, but instead chose to litigate the arbitration and its limited employee-severance benefits issues there and also to actively and hotly litigate the securities fraud and other claims here.

Choosing whether to litigate a particular case or particular claims in an arbitral, as opposed to a judicial, forum is a standard strategic consideration that practicing attorneys typically assess as a fundamental matter in each case. There are substantial and obvious advantages that might lead one to readily conclude that a judicial, as opposed to an arbitral, forum is preferred from the Movant/defendants' perspective for the securities fraud and fiduciary duty claims in this case. For example, arbitrations typically have relatively limited discovery rights and, at a minimum, discovery tends to be narrower in practice in an arbitral proceeding. (This streamlining of discovery is part of the reason why arbitrations are typically concluded more quickly than in-court cases.) Oftentimes defendants prefer more as opposed to less discovery, particularly in big-money fraud cases. In addition, forcing a plaintiff (and in particular, an individual like Ms. Talton) to litigate in two fora as opposed to one requires her to bear more litigation costs, a consideration of which defendants are typically not unaware; moreover, in this regard, in this case there are many defendants (who can share the costs of litigating), and a single plaintiff (who, in relative terms, bears the heavier relative burden of dual-track litigation). That uneven burden would also tend to favor the larger group over time. In addition, arbitrations typically are concluded more quickly than in-court cases—in part because discovery and pre-trial motion practice tends to be more telescoped, and in part because a case in arbitration is not competing with hundreds of others for the resources and attention of judges and jurors, as an in-court case typically does. This pace-of-the-case consideration is germane, as

8

many times defendants (both civil and criminal) believe that delay inures to their benefit. And, to take just one other example, after an arbitration is concluded, the appellate rights of the losing party are quite limited as compared to those of the losing party in a district court case. For all of these reasons, diligent and thoughtful counsel representing the Movant/defendants (as counsel for the Movant/defendants surely are) could very reasonably conclude that it was to the Movant/defendants' substantial advantage to have Plaintiff proceed on the severance-benefits issues in an arbitration and to proceed on the securities fraud and other claims in district court.

Allowing Movants now to claim that the entire district court suit should never have proceeded here, and that instead it should have been brought in the arbitration, therefore smacks of substantial unfairness. The Movant/defendants have reaped material advantages by virtue of the fact that they have had full discovery under the Federal Rules of Civil Procedure as applied in the federal courts. They have filed *seriatim* pre-trial dispositive motions to attempt to end Ms. Talton's case. And they have gained the delay of forcing Ms. Talton to respond to all of those motions before getting a trial. It likely would have been one thing to tell Ms. Talton that she needed to resolve this case in the arbitral setting before all of those advantages were reaped and before an arbitral verdict were issued on the severance-benefit issues, but it is quite another to wait silent on the sidelines until the arbitration is over, to see how that proceeding turns out, and now to claim that these issues should have been resolved there. Again, this Court does not suggest unethical conduct by Movants in this regard or anything of the sort, but the timing of the Motion suggests dilatory motive, and the Motion would, if granted, produce substantial unfairness to Ms. Talton.

### D. Futility

Fourth, and finally, it appears reasonably clear, particularly with respect to the arbitration/*res judicata* theory of Movants, that the proposed amendment would be futile. By arguing that this suit is barred under principles of *res judicata*, Movants are effectively contending that Plaintiff should have arbitrated the claims *sub judice* in the arbitration that concluded in May of 2001. Movants make this contention notwithstanding that this suit was already filed at the time that arbitral trial took place, and Movants did not utter any hint—either in this case or in the arbitration—that the claims at issue in this case should be resolved in the arbitration.

It is fundamental that arbitration rights can be waived. *See, e.g., St. Mary's Med'l Ctr. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 588 (7th Cir. 1992). In this regard, the analysis of whether a party has waived an arbitration right is evaluated based on an assessment of the totality of the circumstances, with the essential question being "whether . . . the alleged defaulting party has acted inconsistently with the right to arbitrate." *Id.* (citation omitted). *St. Mary's*, for example, found that a party waived its arbitration rights where it did not bring up its arbitration argument for ten months after the district court case began, and after the party unsuccessfully tried to have the district court case dismissed. *Id.* at 589. In the instant district court case, Movants have waited until they filed multiple motions to dismiss, conducted full-scale discovery (which almost surely was more comprehensive than they would have obtained in an arbitral forum), filed a summary judgment motion, and completed the entire arbitration, before asserting that this suit should have been conducted elsewhere. Whatever leeway one might allow before a party would be found to have "acted inconsistently with the right to arbitrate," *id.*,

10

Movants passed such limit long ago.

Similarly, while precedent does not require Ms. Talton to show prejudice with respect to a waiver of the Movants' claimed arbitration rights, *see Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (collecting cases), Ms. Talton's clearly has suffered prejudice by having proceeded through litigation here if the arbitral forum was instead required or preferred by Movants. For example, she has been the subject of extensive and costly discovery, which was almost certainly broader than she would have faced in an arbitral setting. She has been forced to respond to multiple motions to dismiss and for summary judgment against her. And she has participated in (and largely prevailed against) all of Movants' attempts to win the case through pre-trial motion practice while awaiting a trial that almost certainly would have come for Ms. Talton more quickly in a private arbitration. Thus, even if prejudice were required, Plaintiff could show it.

The collateral estoppel defense is also likely unavailing and therefore futile. Although the record is incomplete on the matter, at least as presented, the focus of the arbitration appears to have been a breach of contract claim related to Ms. Talton's severance payments. (D.E. 126, Ex. B.) (More discovery would be needed to flesh these issues out, as discussed above when addressing the undue prejudice analysis.) The arbitral findings that Ms. Talton's contractual rights were violated, but that the Movants were not individually liable in that regard (D.E. 126, Ex. B at 1-2), do not lead one to conclude that the Movants could not have committed the alleged securities fraud or breaches of fiduciary duty that are at issue here. This too cuts in favor of a futility finding.

## CONCLUSION

The Court respectfully denies the Motion, finding that the proposed amendment is improper on multiple independent bases. Movants have offered no compelling or legitimate reason for their undue delay; Plaintiff would suffer undue prejudice if an eleventh hour amendment were allowed; the proposed amendment reflects dilatory motive and if granted would permit unfair strategic gamesmanship; and the proposed amendment also appears futile. Plaintiff can fairly expect to proceed now to trial on the case as it has been framed over the many years of pretrial skirmishes. This case was several years old when this Court inherited it, but it now is in a position to be tried and concluded. The judicial system and public have an interest in seeing that disputes are resolved in a reasonably expeditious manner—*see generally Perrian*, 958 F.2d at 195 ("The burden to the judicial system can justify a denial of a motion to amend."); *Bethany*, 241 F.3d at 862 ("We do not require a district court to tolerate such delays.")—and those interests, as well as all of the aforementioned reasons, militate strongly against granting the Motion. For all of those reasons, the Motion to amend the answer is denied.

So Ordered.

_Mark Filip_
Mark Filip
United States District Judge
Northern District of Illinois

Date: 12-20-04